IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 1:15-cv-02033-CBS

VERDA LOUISE SMITH,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

## OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

    This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Verda Louise Smith's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated March 16, 2016, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to Title 28 U.S.C. § 636(c) and D.C.Colo.LCivR 72.2(e). *See* Doc. 23. The court has carefully considered the Complaint (filed September 16, 2015) (Doc. 1), Plaintiff's Opening Brief (filed January 28, 2016) (Doc. 18), Defendant's Response Brief (filed February 25, 2016) (Doc. 19), Plaintiff's Reply (filed March 15, 2016) (Doc. 22), the entire case file, the administrative record, and applicable case law. For the following reasons, the court REMANDS the Commissioner's decision for further proceedings.

# BACKGROUND

In November 2012, Plaintiff filed an application for disability benefits, alleging a disability onset date of March 19, 2011. (*See* Social Security Administrative Record (hereinafter "AR") at 246-52, 253-58). Plaintiff alleges she became disabled due to osteoarthritis, lupus, fibromyalgia, bursitis, and depression. *Id*. at 297. Her medical records document complaints of — among other things — chronic pain, difficulty sleeping, depression, chest pain, wheezing, rashes, GERD, and abdominal cramps. Plaintiff was born on October 30, 1958, and was 52 years old on the date of her alleged disability onset. *Id*. at 51, 292. She obtained her GED and has past work experience in customer service. *Id*. at 298. After her initial application was denied, Plaintiff requested a hearing, which was held on June 12, 2014, before an Administrative Law Judge ("ALJ"). *See id*. at 57-113, 164-66, 167-69, 171-78.

On September 12, 2014, the ALJ issued her decision denying benefits. *Id*. at 20-50. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since March 19, 2011. *Id*. at 36. At step two, the ALJ found that Plaintiff's severe impairments included only her bipolar disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 39-41.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

>perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. She can stand for six hours in an eight-hour workday, and she can walk for six hours in an eight-hour workday. The claimant's ability to sit is unlimited. The claimant can frequently climb ramps and stairs. She can tolerate frequent exposure to environmental irritants, dusts, and fumes. The claimant can have frequent interaction with coworkers, supervisors, and the public.

*Id*. at 41.

At step four, the ALJ concluded that Plaintiff was able to perform past relevant work as an income tax preparer. *Id*. at 50. The ALJ also found, alternatively, that Plaintiff could perform work as a bundle clerk (1,100 Colorado; 103,000 National), a grocery bagger (1,700 Colorado; 168,000 National), and a dishwasher (5,900 Colorado; 286,000 National). *Id*. at 51. Consequently, she found that Plaintiff had not been under a disability as defined in the Social Security Act. *Id*. at 52. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review by the Appeals Council. *Id*. at 14-15. The Appeals Council denied her request on August 3, 2015. *Id*. at 1-7. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on October 3, 2014. Doc. 1. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards, and whether it is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court

may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff raises numerous arguments on appeal. One of those arguments — the ALJ erred in her evaluation of Plaintiff's fibromyalgia — is sufficient on its own to warrant reversal. Therefore, the court declines to address the others as they may be impacted on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."); *see also Brown v. Barnhart*, 182 F. App'x 771, 772 (10th Cir. 2006) (failure to find plaintiff's fibromyalgia severe at step two impacted the subsequent steps in the ALJ's analysis); *Crider v. Barnhart*, 427 F. Supp.2d 999, 1010 (D. Colo. 2006)

(declining to address plaintiff's additional contentions where the ALJ erred at step two by failing to address whether plaintiff had fibromyalgia).

At step two, Plaintiff bears the burden of making a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities. *Brown*, 182 F. App'x at 722 (internal citations omitted). A claimant is only required to make a *de minimis* showing for her claim to advance past step two. *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009); *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (citing *Williamson v. Barnhart*, 350F.3d 1097, 1100 (10th Cir. 2003)). Step two of the analysis is designed "to weed out at an early state of the administrative process those individuals who cannot possibly meet the statutory definition of a disability." *Dray*, 353 F. App'x at 149 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)). Plaintiff contends that the ALJ erred in her determination that Plaintiff's fibromyalgia was not a medically determinable impairment. Specifically, Plaintiff argues that the ALJ's conclusion was not supported by the substantial evidence and was legally flawed. The court agrees.

Fibromyalgia, previously called fibrositis, is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Benecke v. Barnhart,* 379 F.3d 587, 589 (9th Cir.2004). It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n. 1 (8th Cir.2003). The disease is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports and other symptoms." *Benecke,* 379 F.3d at 590. Fibromyalgia will be found to be a medically determinable impairment if it is diagnosed by a physician; however, a doctor's diagnosis of fibromyalgia alone is not sufficient to establish this condition as an impairment. The

diagnosis must be supported by evidence meeting the criteria of either Section II.A or Section II.B of SSR 12–2p. 2012 WL 3104869, at *2. Plaintiff does not dispute that she does not meet the criteria of Section II.A. Doc. 18 at 27. Rather, she argues that the substantial evidence supports a finding under Section II.B that her fibromyalgia is medically determinable.

Section II.B reads in relevant part:

> [W]e may find that a person has [a medically determinable impairment] of [fibromyalgia] if he or she has all three of the following criteria:
>
> 1. A history of widespread pain [][2] ;
>
> 2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs[3], or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded . . . .

SSR 12–2p, 2012 WL 3104869, at *3.

In her fibromyalgia analysis, the ALJ recounted Plaintiff's treatment notes individually, summarized the particular ailments discussed during each separate visit, and then — based on the number of ailments present — made a finding about whether there were six or more fibromyalgia signs and reoccurring symptoms. *See* AR at 37-39. For example, the ALJ noted that

---

[2] This is defined as "pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) [] that has persisted (or that persisted) for at least 3 months," but which "may fluctuate in intensity and may not always be present." SSR 12–2p, 2012 WL 3104869, at *2.

[3] The signs and symptoms include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

in August 2011, Plaintiff reported abdominal pain to her provider who, in turn, suspected that this was secondary to Plaintiff's fibromyalgia. The ALJ found that "these findings do not show that claimant has repeated manifestations of six or more fibromyalgia symptoms/signs/co-occurring conditions." *Id*. at 38. Based on this, and other similar observations made by the ALJ, the court is inclined to agree with Plaintiff. It appears that the ALJ believed that there must be six or more signs, symptoms, or co-occurring conditions documented in *each* treatment note. This approach, however, is directly contrary to the directives of the regulation.

The Social Security Administration rulings recognize that the longitudinal record of an individual's symptoms is important in fibromyalgia cases because "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2P, 2012 WL 3104869, at *6. Indeed, the symptoms "may even be absent on some days." *Id*. at *5. With this in mind, the court observes that Plaintiff's medical records do, in fact, demonstrate the recurrence of six signs, symptoms, or co-occurring conditions — namely, abdominal cramps (AR at 359, 374), difficulties sleeping[4] (AR at 352, 367, 411), wheezing (AR at 404, 428), chest pain (AR at 352, 428), depression (411, 412-13, 428), and rash (AR at 361, 369, 373, 392, 420).

Even if the regulations required six or more signs, symptoms, or co-occurring conditions to be present during the same appointment, the record does in fact contain such evidence. On July 29, 2013, Dr. Deidra Dietz, Plaintiff's primary caregiver, noted that Plaintiff reported increased fibromyalgia pain, joint pain, depressed mood, trouble concentrating, trouble sleeping, poor appetite, and wheezing. *Id*. at 411. The ALJ attempted to discount Plaintiff's symptoms of depression by stating that they appeared to be related to Plaintiff's affective disorder, as opposed to her fibromyalgia. However, there is nothing in Dr. Dietz's treatment notes to support the

---

[4] The regulations include insomnia, and "history of non-restorative sleep" amongst the signs, symptoms, or co-occurring conditions. SSR 12-2P, 2012 WL 3104869, at n.9, n.11.

ALJ's position. Indeed, Dr. Dietz never references Plaintiff's bipolar disorder, and the ALJ did not cite any other evidence to support this finding. Without more, the ALJ's statements with regard to Plaintiff's reported depression are conclusory.[5]

As Plaintiff correctly points out, not only is there evidence of recurring signs, symptoms, or co-occurring conditions, there is also evidence that other disorders — that could potentially cause these repeated manifestations — were excluded. For example, Plaintiff had a negative ANA test[6] (AR at 431), normal spirometry results (AR at 404), x-rays revealing only mild to moderate changes to the thoracic spine (AR at 365-66), and x-rays showing minimal issues with Plaintiff's knees, hips, and shoulder (AR at 401-403). Indeed, the ALJ even referenced some of this evidence in evaluating Plaintiff's credibility.[7] *See id*. at 44-47. Thus, under a *de minimus* standard, the ALJ's finding that fibromyalgia was not a medically determinable impairment appears to be unsupported by substantial evidence.

As this court understands it, Defendant argues that even if the ALJ erred in failing to accept Plaintiff's fibromyalgia diagnosis at step two of the sequential analysis, the error is harmless because there was no evidence of pain and limitations that were not already accounted for in Plaintiff's RFC. Doc. 19 at 11. Specifically, Defendant notes that the ALJ accounted for Plaintiff's moderate cervical degenerative disease, mild degenerative joint disease in her right hip, and minimal degenerative joint disease in her right knee. *Id*.

---

[5] The ALJ's observations are also perplexing because depression is a co-occurring condition. To the extent that bipolar disorder — which is also known as manic depression — is distinguishable, the ALJ cited no evidence or law to support this proposition.

[6] An antinuclear antibody test is used to determine whether someone has an autoimmune disorder such as lupus or rheumatoid arthritis.

[7] Although there are no definitive statements from treating or other physicians expressly excluding other disorders, SSR 12-2p does not specifically require that level of certainty to determine whether the criteria of Section II.B.3 have been met.

Generally, it is true that any error at step two — in failing to consider whether an impairment is severe — may be harmless where the ALJ considers that impairment in subsequent steps. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (finding harmless error "when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"). Here, however, the ALJ failed to consider Plaintiff's fibromyalgia at the subsequent steps because she found that it was not a medically determinable impairment. *See* AR at 41-50. Further, the ALJ's determination that Plaintiff was not entirely credible with respect to the intensity, persistence, and limiting effects of her symptoms "is made problematic by [her] refusal to consider [Plaintiff's] fibromyalgia." *Brown*, 182 F. App'x at 774. This is particularly true in light of the fact that the ALJ discounted Plaintiff's credibility, in part, because her allegations of disabling symptoms were not supported by the objective medical evidence. AR at 49. The ALJ's conclusion in this regard ignores the medical evidence[8], which includes doctors' diagnoses, supporting the existence of fibromyalgia. This error, therefore, calls into question the ALJ's reliance on that evidence — or lack thereof — to discount Plaintiff's credibility.

The court also observes that the ALJ's conclusions regarding fibromyalgia affected her assessment of the consultative examiner's opinions. Specifically, the ALJ gave little weight to the restrictions advocated by Dr. Carson because they were based in large part on Plaintiff's subjective statements. The ALJ also observed that during the consultative exam, Plaintiff had full range of motion of her spine, hips, knees, and ankles. However, as previously noted, "[w]hat makes fibromyalgia difficult to analyze in the social security disability context is the lack of

---

[8] The court notes that the ALJ rejected the conclusions of two previous ALJs regarding Plaintiff's fibromyalgia in part because their conclusions were based on medical evidence prior to the alleged onset date in this case. However, it is well-established that evidence from a prior application, even if not reopened, can be relevant to a claim of disability with a later onset date and should be considered. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

objective symptoms[.] Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, *its symptoms are entirely subjective*." *Id.* at 773 n.1 (quoting *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996)) (emphasis added); *see also Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 820 (6th Cir. 1988) (persons suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion"); *accord Sanchez v. Astrue,* 2009 WL 4810696, at * 4 (D. Colo. Dec. 10, 2009). Had the ALJ found Plaintiff's fibromyalgia to be medically determinable, it may very well have affected the evaluation of Dr. Carson's opinions.

For these reasons, the court concludes that remand is warranted.[9] Upon remand, Plaintiff's credibility and RFC must be reassessed in light of the evidence supporting the existence of fibromyalgia as a medically determinable impairment.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REMANDED for further proceedings consistent with this opinion. The Plaintiff is awarded her costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1).

DATED at Denver, Colorado, this 14th day of October, 2016.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge

---

[9] By this decision, the court is neither finding nor implying that Plaintiff is or should be found to be disabled.